MANLEY'S EXECUTOR v. MIRIAM A. STAPLES.

GENERAL TERM, 1892.

*Insane delusion. Presumption as to continuance. Charge of court. Competency of witness.*

1.  *Held,* that the court sufficiently instructed the jury what, in view of the evidence, would constitute an insane delusion in the testator, and what influence such delusion must have had in the production of the will in order to invalidate it.

2.  That insanity, once existing, continues, is not a presumption of law but an inference of fact, varying with the circumstances of each case.

3.  It was claimed that the testator labored under an insane delusion in reference to his wife and daughter which invalidated the will. *Held,* that the defendant was not entitled to an instruction that if such delusion had continued for several years up to a time eight months before the making of the will, it must be presumed, in the absence of evidence to the contrary, that the same condition of mind existed when the will was made.

4.  The use of a single improper expression by the court in its instructions to the jury is not necessarily error, if the charge taken as a whole must have given a correct impression.

5.  It is the duty of counsel to call attention to such an inadvertence and have it corrected upon the spot.

6.  A beneficiary under the will is not rendered incompetent by the fact that the will purports to confirm a contract between such beneficiary and the testator.

This was an appeal from a decree of the probate court for the district of Rutland establishing the will of Madison S. Manley. Pleas, that the will was not duly executed; that

the testator had not sufficient mental capacity, and undue influence. Trial by jury at the September term, 1891, THOMPSON, J., presiding. Verdict, that the instrument is the will of said Manley. Judgment on verdict.

The testimony in the case tended to show that the testator was a miserly and ignorant old man who had accumulated in his early years considerable property, but who in his later years was infirm and almost helpless. Some years before the execution of the instrument in question his wife had obtained a divorce with alimony to the amount of more than one half his entire property. The contestant, Miriam A. Staples, was the daughter of the testator by this wife. The wife had died previous to the making of the will and the daughter had inherited all her mother's property.

At some time after the death of the wife the testator attempted to make a contract with his daughter, the contestant, who occupied a house in the village of Rutland where the testator resided, to care for him during the remainder of his life. Failing in this he made a contract to that effect with one Fisk, and in pursuance of such contract, in November, 1887, conveyed substantially all his property to the said Fisk, upon condition that he care for and support him during his natural life. The will was executed April 24, 1888, and the bequeathing part of it was as follows:

" First, It is my will that my contract to and with James M. Fisk, dated November 14, 1887, and recorded in the Rutland town clerk's office under date one day later, in book 43, page 364, be and the same is hereby confirmed and approved, and in addition thereto it is my will and I do hereby give, grant, devise and bequeath to said Fisk all of my personal property except the income of the money which is by said contract with said Fisk reserved to me, the said Manley, being interest on certain debts or deposits as therein named, and it is my will that whatever of said interest or income there shall be possessed by me at the time of my death not properly belonging to said Fisk under said contract with

him, shall be had and shared equally by and between my two grand-sons, George W. Staples and Henry Staples."

The evidence of the contestant tended to show that for some years before going to live with Fisk under the contract above mentioned, the testator had entertained an insane delusion that his wife and daughter were living the life of prostitutes and had formed a conspiracy to poison him. There was very little testimony as to his condition after going to Fisk's, he having been seen by comparatively few persons, but the proponents claimed that some testimony tended to show that he was less demonstrative. He removed to Fisk's November 14, 1887, executed the will in question April 24, 1888, and died July 4, 1888.

Upon the trial of the case Fisk was improved as a witness by the proponent, against the exception of the contestant, to all the material matters in controversy.

The questions raised by the exceptions of the contestant to the charge of the court sufficiently appear in the opinion.

*Butler & Moloney* for the contestant.

The charge upon the subject of insane delusion was not correct for the reason that the court refused to recognize the existence of such a mental disease. 1 Jar. Wills, 101, note; *Bitner* v. *Bitner*, 65 Penn. St. 347; *Stanton* v. *Wetherwax*, 16 Barb. 259; *Clapp* v. *Fullerton*, 34 N. Y. 190; *Woodman* v. *Woodman*, 47 N. H. 120, 128.

The jury should have been told that the insane delusion of of the testator in reference to his wife and daughter was presumed to continue. *Crocker* v. *Case*, 57 Vt. 413, 420; 1 Jar. Wills, 102, note.

Fisk was not a competent witness for the reason that the will, by confirming the contract, virtually made him a party. *Hall* v. *Hamblett*, 51 Vt. 589; *Fitzsimmons* v. *Southwick*, 38 Vt. 509; *Cheney* v. *Pierce*, 38 Vt. 509, 515; *Howe* v.

*Howe*, 99 Mass. 98; *Crocker* v. *Case*, 57 Vt. 420; *Barnes* v. *Dow*, 59 Vt. 530; *Pember* v. *Congdon*, 55 Vt. 58; *Randall, Admr.*, v. *Randall*, 224 Atl. Rep. 1,011; *Ins. Co.* v. *Wells*, 53 Vt. 14; *Re Buckman*, 24 Atl. Rep. 252; *Re Foster*, 24 Atl. Rep. 253.

*J. C. Baker* for the proponents.

Fisk was a competent witness. *Foster* v. *Dickerson*, 24 Atl. Rep., 253; *Re Buckman's Will*, 24 Atl. Rep. 252.

Whether insanity continues is a question of fact for the jury. *Dale's Appeal*, 57 Conn. 127; *Williams* v. *Robinson*, 42 Vt. 658; *Richmond's Appeal*, 21 Am. St. Rep. 85 and note; *McCoon* v. *Allen*, 17 Atl. Rep. 820.

The opinion of the court was delivered by

ROWELL, J.   Concerning her second and third requests and the charge relevant thereto, the defendant claims error, for that the court denied in effect that there is such a thing known to the law as an insane delusion, and left it to the jury to say whether such a thing exists.

It is true that in the commencement of the charge on this subject the court told the jury it was all a question of fact for them to say on the evidence whether there is such a mental disease or derangement as the doctors had described and called an insane delusion, and if yes, whether the testator was afflicted by it when he made his will; but the court straightway by necessary implication assumed the existence of such a disease, and proceeded to charge fully and correctly from that standpoint, telling the jury what, in view of the evidence, would constitute insane delusion in the testator, and what influence such delusion if it existed must have had in the production of the will in order to invalidate it.   It is clear from the whole charge on this subject that the jury could not have been misled to the prejudice of

the defendant by what was said about its being for them to say whether there is such a disease.

The fourth request is not sound because, if for no other reason, it ignored the contingency that the delusion might be found to have wholly and permanently disappeared before the will was made, in which case the will should not be regarded with distrust by reason of it.

It appeared that about eight months before his death, the testator left the village of Rutland, where he had resided many years, and went a little out to live with Mr. Fisk, the principal beneficiary under the will, with whom he continued to live till his death. It was while living with Fisk that he made the will and the contract therein mentioned. The testimony on the part of the defendant tended to show that the testator was continuously possessed of an insane delusion concerning his wife and his daughter for a number of years next before he went to Fisk's, and that after he went there comparatively few persons saw him, and the testimony on the part of the plaintiff tended to show that after he went there he was less demonstrative, less eccentric, and in fact better than when he left the village; and there was no evidence of false accusations against his wife and daughter after about that time. In this state of the case the defendant requested the court to charge that if the jury found that the testator was possessed of an insane delusion concerning his daughter when he left the village and had been thus possessed continuously for a number of years next before, that that condition of mind would be presumed to continue to the time of the making of the will unless they were satisfied from the evidence that a change in that condition had taken place; which the court refused to do, and this is claimed to be error.

That insanity continues is, not a presumption of law, as is sometimes said, but an inference of fact, varying with the circumstances of the case. 2 Whart. Ev. s. 1,253. In order to warrant the inference, the insanity must be what is some-

times called general or habitual insanity, which means that it must be permanent in character. *Note to the case of Cochran's Will*, 15 Am. Dec. 116.

But the court could not tell the jury that if the testator had been deluded a number of years his delusion must be taken to be permanent in character and be presumed to continue. The fact that it had existed a number of years would undoubtedly have been strong evidence of its permanency, but by no means conclusive. It was for the jury to say upon all the evidence what its character was in this regard. Had there been added to the request the contingency of finding permanency of character in the delusion, the refusal to comply with it would have presented a different question; but as the request was framed, it was not error to refuse to comply with it.

In answer to the sixth request, the court charged fully and correctly as to what constitutes undue influence, and then made a comprehensive statement of the things that the defendant claimed to exist and upon which she relied to show undue influence, and in that connection told the jury that if those things were true they were evidence tending to show such influence. The things thus stated to the jury and relied upon, if found to be true, would not only *tend* to show undue influence, but they would *constitute* undue influence, and therefore error is predicated of the expression, " *tending* to show." If the charge stopped here, the claim of error would be well founded. But it does not, for immediately after that expression the court goes on to say, that " it is for you to say whether you find such a state of facts from the evidence, and whether the will was a product of that undue influence." Here the court calls " such a state of facts," if found, undue influence, which was correct. Then at the close of the charge the court said: " If you find that he had testamentary capacity, you will proceed to consider the question of undue influence. If you find that

undue influence is proved to the extent the court has described to you as necessary, then the instrument, the product of that undue influence, is not the will of Mr. Manley, and your verdict will be that it is not his will." In view of the whole charge on this subject, it is clear that the jury could not have been misled into supposing that if the things stated by the court were found to exist they would not necessarily constitute undue influence. This is but a simple expression selected from a long charge on that subject, correct in all other respects, and if the defendant's counsel feared that the jury might be misled by it, he should have called attention to it on the spot, that it might be corrected. What is said on this subject in *Melendy* v. *Bradford*, 56 Vt. 148, is applicable here.

It is objected that Fisk was not a competent witness, because he was a party to the contract confirmed by the will, the other party being the testator. But that contract was in no sense in issue and on trial. If the establishment of the will can have any effect on that contract, as to which we express no opinion, it can do so only incidentally and collaterally ; and therefore Fisk was competent.

There are a few other points of exception ; but they have not been much urged and are of minor importance. We find no error in respect to any of them.

*Judgment affirmed and ordered to be certified to the probate court.*